Bergan, J.
The charges upon which petitioners were dismissed from the police department by the commissioner after a trial before his deputy are essentially the same charges on *384 which they were previously acquitted by the commissioner. The central problem presented here is whether the prior determination dismissing the charges had such legal finality that it has become conclusive and is not open to the commissioner’s re-examination.
That this double exposure to the loss by petitioners of their positions is not double “ jeopardy ” in the sense in which the Constitution affords protection was quite fully demonstrated at Special Term upon the denial of the motion to enjoin the commissioner from proceeding with the charges now reviewed (McGillicuddy v. Monaghan, 201 Misc. 650).
The charges of misconduct in office rest on the testimony of Harry Gross, a book-maker, that he paid the petitioners as police officers to protect him in his gambling enterprise and that he was protected by them.
Petitioners were cited as co-conspirators in the police protection of Gross by the Grand Jury of Kings County in an indictment returned May 8, 1951. They were not indicted for crime. Charges of accepting money to protect Gross and of protecting him on the basis of the indictment were made in the police department against petitioners and a third deputy commissioner to act as hearing officer was designated by the commissioner on October 18, 1951.
Gross, however, refused to testify and the hearing officer directed that the petitioners be sworn and be examined. Under oath they denied the charges. There was no evidence against the petitioners; the hearing officer found them not guilty on December 27,1951, and recommended restoration to duty, which advice the commissioner followed by confirming the findings and restoring petitioners to duty.
Four months later, on April 23,1952, the charges here reviewed were filed. These reiterated the accusations dismissed in December, 1951, and contained additional specifications of misconduct based on the falsity of the testimony of petitioners at the first hearing in which they denied receiving money from or protecting Gross in his gambling operations. On April 25th the commissioner appointed another third deputy to act as hearing officer.
Upon the hearing of these new charges Gross testified at great length to a multitude of details. His testimony occupies more than 450 pages of the printed record before us. If his testimony is credible the specifications of the charges against petitioners could be sustained. The hearing officer found the petitioners guilty on all of the specifications, including the falseness of *385 testimony given at the first hearing, and recommended their dismissal.
The commissioner, in his order, adjudged each petitioner ‘1 to be guilty of the charges and guilty of the specifications, and does convict him thereof,” and determined that each petitioner be dismissed from the department.
Before the rule that a judicial determination once finally made is conclusive between the parties is applied with all rigor to an administrative determination affecting the right of continuance in public employment, we ought to examine the basis for this judicial policy which courts follow. The main reason for the policy treating adjudications as conclusive on the parties is that every workable system of law must find a way of ending the controversies it adjudicates. It is essential to the work of a judicial establishment that when a judgment is rendered with finality and authority, the parties are no longer able again to litigate the decided question.
The rule has never prevented the court itself from being moved to reopen the case and to re-examine the basis of its judgment for a cause which the court would regard as sufficient. While the judges developed a set of their own limitations on the sufficiency of the grounds which would move them to reopen, the rules related to the circumstances of exercise of power rather than to the power itself.
A rule of law which would always treat as an analogue to the judgment of a court the determination of an administrative officer in the discipline of public employees would have to have a guarded acceptance and be taken with some considerable reservation. The theory of the enlargement of the court rule of finality to take in administrative determinations is that the administrator has acted “ judicially ”, but that analogy in such a case rests very largely upon the fact that he conducts a hearing.
His determination of what to do about the charges, if he finds them sustained, is essentially an administrative function, for in that phase of his authority he carries out the duty to administer the public agency in the direction of the public service it performs.
If a court for reasons it regards as acceptable can re-examine its own judgments, conclusive though they may be on the parties, an administrator, for reasons which he deems acceptable and which on review a court can see to be reasonable, ought to have a similar privilege. It seems no answer to this that in the course of making his determination the administrator had to *386 sift and evaluate the facts and thus act “ judicially The analogy of the function of the administrator to that of a court ought to be kept within a reasonable area.
There are citable cases which suggest that finality follows an administrator’s determination on the discipline of a public employee, but the vein of authority runs very thin. One of the grounds upon which the court at Special Term in McGillicuddy v. Monaghan denied an injunction restraining the hearing of the new charges in the case now before us was that the question "of res judicata would be available in this proceeding for a direct review, and there was an intimation that the principle of res judicata would be applicable. On appeal to this court (280 App. Div. 144) the availability of this question on review" was readily accepted and the order was affirmed, but there was an express disavowal of any attempt, then to assess the merits, of that question.
The language which is often quoted on this subject from Osterhoudt v. Rigney (98 N. Y. 222, 234), and which is printed in petitioners’ brief, that the rule which forbids the reopening of a matter “ once judicially determined ” applies “ as well to the decisions of special and subordinaté tribunals ” as to decisions of courts “ exercising general judicial powers ”, must be read in a close application to the facts there before the court for decision and to the underlying cases on which the court there relied in making this general statement.
The court there had before it a taxpayer’s action which sought to vacate audits of town accounts and to restrain the supervisors from levying taxes to pay these accounts as audited. The accounts had been received, passed upon and rejected by a prior town board.
The court was of opinion that the scheme of the statute for annual audit of accounts by town boards did not allow room for a revision of these audits by a subsequent board. “ All the arrangements of the statute look to a summary and complete determination by the auditors ” (p. 234). It was in this context that Judge Andrews wrote the language expressing the general similarity between judicial determinations of “ special and subordinate tribunals ” and determinations by courts of general jurisdiction.
The Reporter (Sickels) treated this statement as dictum (p. 222) for he prefaced it with the words “ It seems that by which contemporary Reporters then always gave warning to the Bar. "When the two cases underlying the statement in the *387 opinion are resorted to, it will be seen why the precaution was deemed necessary. One is Van Wormer v. Mayor (15 Wend. 262); the other is White v. Coatsworth (6 N. Y. 137).
In Van Wormer v. Mayor, the board of health of Albany had directed the demolition of plaintiff’s barn and sheds during the prevalence of Asiatic cholera in the summer of 1832, and the court at circuit had granted a nonsuit in an action against the city officers for trespass. The court was of opinion that the board of health had sufficient authority under a series of statutes to prevent the spreading of pestilential diseases and that for the purposes of the lawsuit the determination by the board that the structures were a nuisance and should come down would be accepted, and the defense they were not a nuisance but examined.
In White v. Coatsworth the prior adjudication deemed binding was made by a court in a summary proceeding to recover possession of real property. A jury had found that no rent was due. The landlord subsequently distrained property of the tenant to satisfy the same rent. It was held in the tenant’s replevin suit that the prior adjudication on the same subject by a court of competent jurisdiction was conclusive against the landlord (p. 141). These cases give no support to the binding effect of judicial determinations of administrators. The board of health’s order that structures regarded as a danger to public health come down had nothing whatever of a judicial cast about it; and the jury’s determination in the summary proceeding was a judicial and not an administrative determination.
Other authorities relied on by petitioners do not add much strength to the argument. Matter of Hyland v. Waldo (158 App. Div. 654) turned upon the construction of a statute. The city charter provided that a policeman dismissed for conduct unbecoming an officer could not thereafter be reinstated. There a policeman was dismissed, but the question was re-examined by the police commissioner and he was reinstated. The civil service commission directed a redismissal on the ground that under the statute the policeman once discharged could not be reinstated, and on mandamus the court upheld the view of the commission. It is true enough that the opinion (p. 656) quotes from Osterhoudt v. Rigney, but the decision turned on the view of the court that relator had been “ reinstated in violation of express provisions of law ”. (P. 659.)
The question decided in People ex rel. McCabe v. Matthies (179 N. Y. 242) was procedural. The review by a claimant of a determination by a town board rejecting a claim was to be *388 by certiorari, the court held, rather than by mandamus, since the determination to reject the claim was treated as quasi judicial in character.
The Federal authorities discussed are not helpful. In Dennison v. Payne (293 F. 333) it was held that a determination by the Pennsylvania Workmen’s Compensation Board allowing a claim for compensation in a railroad case, by holding that it arose in intrastate commerce in a proceeding in which both parties were represented, was a binding determination when in a later lawsuit in Federal court it was contended that the injury was sustained in interstate commerce. In Durant v. Essex Co. (7 Wall. [74 U. S.] 107) the court considered the binding effect of the judgment of a court, absolute in its terms, dismissing a suit in equity.
The decision by the Appellate Division, Second Department, in Matter of Stowell v. Santoro (256 App. Div. 934) is some authority for the argument pursued by the petitioners. Several charges were heard against the chief of police by the town board.
One of the specifications of the charges had been heard three years before by the board, and he had been acquitted. The court held that on this specification of the current charges he could not be convicted on retrial. The authority cited was Osterhoudt v. Rigney. On certain of the other charges the court confirmed the conviction and remitted the case to the board to fix the punishment as thus confirmed.
Respondent here argues from the record on appeal in Matter of Stowell that the original determination of acquittal was there fully on the merits and that a witness who testified at the second trial had been available but had not been called at the first hearing.
Whatever may be the differences between that case and the one now before us, we do not regard that decision based on Osterhoudt v. Rigney as a binding determination that an administrative officer may never re-examine a charge of official misconduct upon which he has once refused to remove a public employee, even though the ground for re-examination may appear to the officer to be proper and be regarded by a court as reasonable.
We do not hold that this kind of re-examination may be undertaken lightly or that a court will necessarily or always approve such a procedure, but where there seems solid and acceptable ground for re-examination, the power to do so ought not to be cut off by the court automatically and invariably.
*389 In the case before us we think the terms of the 1951 indictment gave a basis for the charges in the first place; and their dismissal when the main witness refused to testify could scarcely be regarded as a determination on the merits as that term is commonly understood.
We would hesitate, too, to apply to this kind of a determination, involving discipline of public employees, the full effect of court judgments between litigating parties. The general rule has been stated that while the doctrine of res judicata applies to a judicial determination of a board or officer, it does not apply “ to a decision made while acting ministerially or administratively.” Such a determination, if ££ not recognized by the law of the forum as a judgment,” is ££ no bar to further proceedings in relation to the same matter ” (50 C. J. S., Judgments, § 606, p. 29).
Even in matters in which quasi-judicial determinations seem very close to decisions affecting the rights of adverse parties, such decisions sometimes have been treated by the court as not conclusive on those rights. Thus in an action against a public utility to recover excess charges for electricity resulting from plaintiff’s use of one schedule rather than another on representations by the utility that there would be a saving, the filing by plaintiff of a claim for refund with the Public Service Commission and its rejection by the commission was not deemed a binding determination, although both parties seem to have been before the commission on the application (Stern Bros. v. New York Edison Co., 251 App. Div. 379). The case is quite similar in principle to Murphy v. New York Central R. R. Co. (225 N. Y. 548).
We think, therefore, that the police commissioner was not precluded by a binding legal rule of estoppel, because of his dismissal of the charges after the refusal of a witness to testify, from reopening the charges when the testimony later became available, and we would not extend by analogy to this re-examination by the commissioner the rule of law which makes the judgment of courts binding on litigants.
Two other questions require our attention. One is whether the purported falsity of the testimony of petitioners on the first hearing can be a basis of specifications of misconduct under the current charges. In directing that petitioners testify over their objection, the first hearing officer did so on the theory that it was their duty to explain their acts to their superiors and he expressly preserved their right to decline to answer on the ground of self-incrimination.
*390 Petitioners argue that the direction by the hearing officer to testify was unlawful and they cite Martin v. O’Keefe (195 App. Div. 814) and People ex rel. Schauwecher v. Green (96 App. Div. 249). But if petitioners are right in saying that they could not be required to testify, they should not have testified and thereby taken whatever risk a man usually takes that a court may later say that the course he followed was the wrong one.
Having undertaken to explain their conduct, they were obliged to make a truthful explanation. We agree with petitioners, however, that there is a substantial merger of the original charges of misconduct in office and the charges arising from their explanation of the misconduct. We would not sustain the charge of making a false explanation of the conduct unless we were prepared also to sustain the underlying charge itself (People ex rel. Schauwecher v. Green, supra).
The other question is whether the proof in support of the determination is substantial. In the end all the specifications of the charges depend on whether Gross is believed. It makes a hard case to take the word of a book-maker heavily pressed for official favor against the word of police officers.
But the hearing officer of the police department in weighing the testimony before him accepted the book-maker’s version of the facts and reported his acceptance to the commissioner. The commissioner, who in turn has a general responsibility to the public and to the department itself to maintain police morale, accepting the report, regarded the testimony of Gross on which it was based as credible, and dismissed the petitioners from the service. On this judicial review we do not feel obliged to hold that the testimony of Gross, involving numerous transactions and events, is incredible as a matter of law, or that the commissioner was unreasonable if he believed and acted on that testimony. This ends our inquiry. We have no power to weigh the evidence. Our duty is to see whether on the record as a whole there is substantial evidence to support what the commissioner did. We do not regard the petitioners’ complaints about the • procedural course followed in the conduct of the hearing as presenting a substantial question.
The determination of the respondents should be confirmed.